U.S. COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-2101
_____

RLF NAZARETH, LLC,
Appellant

v.

YORK RSG (INTERNATIONAL) LIMITED; CERTAIN UNDERWRITERS AT
LLOYDS ASCRIBING TO CONTRACT 1706400

_____

Appeal from the District Court, D.V.I.
Chief Judge Robert A. Molloy, No. 3:19-cv-00071

_____

Before: KRAUSE, CHUNG, and SMITH, *Circuit Judges*
Argued May 13, 2026
Decided June 3, 2026

_____

NONPRECEDENTIAL OPINION*

_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

SMITH, *Circuit Judge.*

Plaintiff-Appellant RLF Nazareth LLC ("RLF") appeals from a judgment entered on a jury verdict rejecting its bad faith claim against Defendant-Appellee Certain Underwriters at Lloyds Ascribing to Contract 1706400 ("Lloyds"). On appeal, RLF argues that the District Court erred in instructing the jury on breach of contract—an element of bad faith. In RLF's view, the issue of breach had been resolved at summary judgment.[1] RLF also assigns plain error to the Court's supposed suggestion that bad faith required proof of unpaid damages beyond the amount Lloyds had already paid pursuant to an appraisal award. We disagree. The District Court's prior rulings did not remove the issue of breach from the trial, and the charge, read as a whole, did not mislead the jury. We therefore will affirm.

**I**

In September 2017, two major hurricanes struck St. Thomas, U.S. Virgin Islands, in rapid succession. Together, Hurricanes Irma and Maria—the fifth and third costliest hurricanes on record, respectively—caused roughly $140 billion in damage in U.S. territories alone.[2] This case concerns a small part of that loss.

---

[1] *See RLF Nazareth, LLC v. York RSG (Int'l), Ltd.,* No. 3:19-CV-0071, 2024 WL 1305594, at *1 (D.V.I. Mar. 27, 2024).

[2] Doyle Rice, *2017's three monster hurricanes—Harvey, Irma and Maria—among five costliest ever*, USA TODAY (Jan. 30, 2018), https://www.usatoday.com/story/weather/2018/01/30/2017-s-three-monster-

RLF owns property located at 7-2 Estate Nazareth, St. Thomas, Virgin Islands 00802 (the "Property"). The Property consists of a main building and three smaller cottages, all of which sustained damage during the hurricanes. At all relevant times, Lloyds insured the Property against certain risks, including windstorms. RLF's policy (the "Policy") covered "the dwelling . . . including structures attached to the dwelling." JA665; JA688. It did not, however, cover "other structures . . . set apart from the dwelling by a clear space." *Id*. The parties' original dispute thus centered on whether the three cottages, and damage to them, fell within the covered "dwelling" or instead qualified as excluded "other structures" under the terms of the Policy.

After RLF filed its claim, Lloyds retained York RSG (International), Limited ("York") to inspect the Property.[3] In its initial inspection, York proceeded to adjust only the main building, not the cottages, and concluded that the gross adjusted loss for the Property was only $60,000. In a letter dated February 13, 2018, Lloyds informed RLF of this loss estimate, which fell below the Policy's deductible of $162,000. RLF disagreed with the loss calculation and retained its own adjuster,

hurricanes-harvey-irma-and-maria-among-five-costliest-ever/1078930001/ [https://perma.cc/Z3NA-6DD2].

[3] York is now known as Sedgwick Claims Management Services, Inc. *See* Resp. Br. at 1. Although Lloyds refers to the company as "Sedgwick," RLF and the District Court primarily referred to it as "York," and we do the same for clarity.

Global Consulting Systems, LLC ("Global Consulting"). Global Consulting included the detached cottages in its estimate and valued the loss at $556,494.02. Lloyds then instructed York to conduct a second inspection that included the cottages and revised its estimate to $189,065.13.

RLF rejected York's revised assessment and, on September 6, 2019, filed a complaint in the District Court of the Virgin Islands against both Lloyds and York asserting three causes of action. First, RLF alleged that Lloyds breached the parties' insurance contract by failing to pay the full amount of covered losses. Second, RLF alleged that York negligently failed to "properly, accurately, or otherwise competently determin[e] the damages covered" under the Policy. JA6. Third, RLF alleged that both Lloyds and York acted in bad faith during the adjustment process.

The parties later engaged in settlement discussions and mediation, but those efforts failed. Lloyds then moved to compel appraisal by invoking the Policy's appraisal clause. RLF opposed that request, arguing that Lloyds could not invoke appraisal at that stage of the dispute. The District Court disagreed and enforced the appraisal clause. The parties then proceeded to appraisal.

The appraisal panel fixed the total amount of loss at $301,012.29. It also separately valued damage to the deck and pool areas of the Property at $21,000 and $15,000, respectively, while noting that the parties disputed whether those areas were covered. After Lloyds moved to enforce the appraisal award, the District Court

4

concluded that the pool and deck areas were covered and directed Lloyds to pay RLF $174,412.29, representing the total covered loss less the Policy's deductible. Lloyds paid that amount in full on August 15, 2023.

After Lloyds paid the appraisal award, the litigation narrowed substantially. On March 27, 2024, the District Court issued a memorandum opinion resolving the parties' cross-motions for partial summary judgment. The Court held that RLF's breach-of-contract claim was moot because Lloyds had already paid the full amount owed under the Policy, leaving "no unpaid damages under the contract." JA45.[4] In a footnote, the Court added that, with respect to pool coverage, "[l]iability and damages have already been resolved as to the breach of contract claim" because its earlier order enforcing the appraisal award "necessarily found that Lloyds breached the insurance contract by seeking to avoid coverage for damage to the pool." JA44 n.3.

As to RLF's bad faith claim, the District Court denied summary judgment. It explained that to prevail, RLF had to prove, *inter alia*, "the existence of an insurance contract between the parties and breach by the insurer" and that the insurer intentionally and knowingly refused to pay the claim, despite the absence of "any

---

[4] Although RLF insisted that certain consequential damages remained pending, such as the costs of the umpire and appraiser, attorney's fees and litigation expenses, the cost of its public adjuster, and prejudgment interest, the District Court rejected those arguments. RLF does not challenge that determination on appeal.

reasonably legitimate or arguable reason" for doing so. JA50 (citation omitted).[5] In the District Court's view, genuine disputes of fact remained as to whether the February 13, 2018 letter constituted a coverage determination—and thus a denial of coverage as to portions of the Property—and, relatedly, whether Lloyds knowingly and intentionally excluded the cottages from coverage in 2018.

The case narrowed further before trial. In a pretrial order dated May 17, 2024, the District Court dismissed RLF's negligence claim against York and barred RLF from seeking compensatory damages based on attorney's fees, appraisal and umpire costs, public-adjuster costs, or prejudgment interest. At the same time, the Court permitted RLF to present evidence that Lloyds had denied coverage and to introduce

---

[5] In the Virgin Islands, to make out a cause of action for the tort of bad faith, a plaintiff is required to show:

> 1) the existence of an insurance contract between the parties and a breach by the insurer; 2) intentional refusal to pay the claim; 3) the non-existence of any reasonably legitimate or arguable reason for the refusal (debatable reason) either in law or fact; 4) the insurer's knowledge of the absence of such a debatable reason[;] or 5) when the plaintiff argues that the intentional failure results from the failure of the insurer to determine the existence of an arguable basis, the plaintiff must prove the insurer's intentional failure to determine the existence of such a debatable reason.

*Justin v. Guardian Ins.*, 670 F. Supp. 614, 617 (D.V.I. 1987).

breach-related evidence insofar as it bore on the remaining bad faith claim. On that score, the District Court explained:

> Although the Court has resolved all the pending issues related to RLF's contract claim, thereby eliminating the need to present the claim to the jury, that does not mean all discussion of the contract and the alleged breach are now foreclosed. RLF's bad faith claim necessarily requires it to show that a contract exists between the parties and that there was no debatable reason for Lloyds refusing to pay the claim, i.e., no debatable reason for breaching the contract. . . . Accordingly, the Court must allow RLF to introduce evidence of the alleged breach of contract in order for the jury to determine if the alleged breach constituted bad faith on the part of either Lloyds or York.

JA768 n.3.

Later, at a status conference on September 11, 2024, the District Court again made clear that the only surviving claim was RLF's bad faith claim and that, if RLF prevailed, punitive damages would be the only available remedy because all other damages had been mooted by payment of the appraisal award. Counsel for RLF expressed some confusion and sought clarification regarding the issues that remained for the jury. In particular, he asked whether the summary judgment ruling established that Lloyds had breached the contract as a matter of law, thereby satisfying the first element of the bad faith claim. The District Court responded that RLF would need to prove all elements of bad faith to prevail at trial.

The case then proceeded to trial on the bad faith claim alone.[6] Even so, RLF's counsel continued to blur the line between the mooted breach-of-contract claim and breach as an element of the remaining bad faith claim. For example, after the defense rested, RLF's counsel moved for a Rule 50 directed verdict "on the breach of contract claim," then clarified that he sought a directed verdict on "the breach of contract element of the bad faith claim." JA102. He further argued that the burden of proof "with regard[] to breach of contract would be preponderance of the evidence." *Id*. But, as the District Judge pointed out, breach was not a separate claim for the jury to decide but merely an element of bad faith, the latter of which needed to be "demonstrated by clear and convincing evidence." JA102–103.[7] Counsel nevertheless persisted in stating that "there is a breach of contract claim" and that "the breach of contract is in our complaints." JA106–107. The District Judge responded by reminding counsel that it had already held the breach of contract claim moot and that, whatever had been pleaded in the complaint, that claim was "not currently" pending before the jury. JA106–107.

---

[6] The parties stipulated that the Property's "dwelling" consisted of the main area and the three cottages and that the cottages were not "other structures" under the Policy.
[7] *See Justin,* 670 F. Supp. at 617 (holding that "a plaintiff in a bad faith action [must] prove the existence of [the bad faith] elements by clear and convincing evidence").

At the charge stage, the District Court instructed the jury on the elements of a bad faith claim. Those elements included "the existence of an insurance contract between the parties" and a breach of that contract by the insurer. JA176–77. The Court also defined breach of contract as "occur[ring] when a party breaches a duty created by an agreement that results in damages." *Id*. at 177. The Court further explained the contours of bad faith to the jury:

> Bad faith may exist if after the investigation the company decided that the claim was valid but refused to pay the claim or the insurance company intentionally refused or failed to investigate whether there was any lawful reason for denying the claim then it will be liable to the person to whom they issued the policy for its bad faith. Likewise, bad faith may exist if the insurance company unreasonably and purposefully and in bad faith withholds or tr[ies] to evade paying the claim of the person and insured.

*Id*. The jury thereafter returned a verdict for Lloyds, and the District Court entered judgment on May 13, 2025. RLF timely appealed, challenging the jury instructions given on its bad faith claim.

## II[8]

RLF did not object to the challenged instructions at trial. Our review is therefore for plain error only. *See* Fed. R. Civ. P. 51(d)(2). In the civil context, plain-

---

[8] The District Court had subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) because RLF is a citizen of the U.S. Virgin Islands, Lloyds and York are foreign citizens, and the amount in controversy exceeds $75,000. We have jurisdiction under 28 U.S.C. § 1291.

error review is narrow and exercised "sparingly." *Alexander v. Riga,* 208 F.3d 419, 426–27 (3d Cir. 2000) (citation omitted). We may reverse only if the error was "(1) fundamental and highly prejudicial or if the instructions [were] such that the jury [was] without adequate guidance on a fundamental question and (2) our failure to consider the error would result in a miscarriage of justice." *Id.*

In conducting that review, we must consider the "totality of the instructions." *Limbach Co. v. Sheet Metal Workers Int'l Ass'n, AFL-CIO,* 949 F.2d 1241, 1259 n.15 (3d Cir. 1991). Our task is not to ask whether a particular sentence or phrase, read in isolation, might be awkward or imprecise. It is to determine whether the charge as a whole, "fairly and adequately present[ed] the issues in the case without confusing or misleading the jury." *Donlin v. Philips Lighting N. Am. Corp.,* 581 F.3d 73, 79 (3d Cir. 2009) (internal quotation marks and citation omitted). And even if one portion of an instruction contains an error, reversal is not warranted where it amounts only to a "solitary misstatement of law buried in an otherwise correct legal explanation." *Harvey v. Plains Twp. Police Dep't,* 635 F.3d 606, 612 (3d Cir. 2011) (internal quotation marks and citation omitted).

## III

RLF challenges the District Court's bad faith jury instructions on two related grounds. It first argues that the District Court should not have instructed the jury on

10

breach because, in RLF's view, the Court had already resolved that issue at summary judgment. It next argues that the charge improperly suggested that the jury could not find bad faith absent unpaid contractual damages beyond the amount Lloyds had already paid under the appraisal award. Neither argument demonstrates plain error.

## A

We begin with RLF's argument that breach should not have gone to the jury at all. According to RLF, the District Court's March 27, 2024 summary judgment ruling and later colloquies resolved breach as a matter of law, so law-of-the-case principles barred the jury from revisiting that issue. Op. Br. at 17.[9] The record does not bear that out.

From start to finish, the District Court treated breach as a live issue *to the extent it formed part of RLF's bad faith theory*. While the Court had resolved the existence of a breach as to the denial of the pool's coverage before trial, it made clear that it was leaving open the question of breach as to denial of the cottages' coverage, which was the breach that RLF asserted at trial for purposes of its bad faith claim. For example, in denying summary judgment on the bad faith claim, the District

---

[9] "Under the law-of-the-case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *American Civil Liberties Union v. Mukasey,* 534 F.3d 181, 187 (3d Cir. 2008) (internal quotation marks and citation omitted).

Court explained that genuine issues of material fact remained as to "whether the initial letter RLF received on February 13, 2018, constitutes Lloyds' coverage determination, and, therefore, whether Lloyds denied coverage on certain portions of the property in 2018." JA50. Likewise, in its May 17, 2024 pretrial order, the District Court identified whether "Lloyds denied coverage under the Policy" as to the cottages as being "at the heart of the instant dispute," and allowed RLF to introduce evidence on that point specifically to prove that Lloyds breached the contract. JA768. Of course, the District Court could not have determined that Lloyds breached its duty to provide coverage without first determining that Lloyds had, in fact, denied coverage. And at trial, the District Court explicitly stated that a genuine dispute existed as to whether there was a denial over coverage of the cottages and, if so, whether that denial was a breach.

Even RLF's attorney acknowledged, before and during trial, that the question of whether Lloyds breached the contract with respect to coverage of the cottages remained unresolved. At the September 11, 2024 status conference, RLF's counsel stated that one element of its bad faith claim was "showing [a] breach of contract on the dwelling coverage" and asked whether that issue "had . . . been disposed of by the Court." JA62–63. The District Judge responded unequivocally that, as to the cottages' coverage, RLF would need to prove all the elements of bad faith at trial,

12

one of which was breach.[10] Counsel then conceded that he did not "see any order from the Court that directly addresses [the] breach of contract on the coverage issue with respect to the dwelling." JA63.

RLF's understanding that the Court had not definitively resolved the alleged breach as to the coverage of the cottages was reflected at trial as well. At one point, RLF's counsel moved under Rule 50 for a directed verdict on "the breach of contract element of the bad faith claim." JA102. That motion makes sense only if breach as to the coverage of the cottages remained a live issue. And RLF's counsel acknowledged that the Court's summary judgment order showed that Lloyds "had breached the contract with respect to the pool and the deck," by refusing to pay those damages, but that it was "silent as to the dwelling." JA61. Thus, despite its repeated attempts to elide breach as to the coverage of the pool and breach as to the coverage of the cottages, RLF cannot seriously contend now that the March 27, 2024 order addressed the latter issue at all, much less resolved it conclusively.

To be sure, RLF points to a few statements in the Court's March 27, 2024 order that, read in isolation, seem to support its position. But those statements cannot be divorced from the context in which they appear. Most notably, the District Court's

---

[10] Likewise, at trial the District Judge explained that breach was an element of bad faith and that "[t]he jury ha[d] to find each of th[ose] elements . . . from clear and convincing evidence." JA103.

13

stated in a footnote that "[l]iability and damages have already been resolved as to the breach of contract claim." JA44 n.3. But the surrounding discussion addressed mootness, not a definitive adjudication of whether Lloyds breached the contract by denying coverage of the cottages at any point. Indeed, the Court expressly stated that "RLF cannot establish a prima facie case for breach of contract because, *even if Lloyds' conduct amounted to a breach* . . . Lloyds has already paid the total amount owed under the insurance policy." JA45 (emphasis added). That formulation presupposes, rather than resolves, the breach question. The same is true of the Court's statement that, in enforcing the appraisal award, it had "necessarily found that Lloyds breached the insurance contract by seeking to avoid coverage for damage to the pool." JA44 n.3. This statement does not carry the weight RLF places on it— i.e., as resolving breach of contract as to the coverage of the cottages for purposes of RLF's bad faith claim.

In short, when the District Court's orders and on-the-record explanations are read together, they make clear that breach remained for the jury to consider as part of RLF's bad faith claim. The District Court therefore did not err, much less plainly err, in instructing the jury accordingly.

14

**B**

RLF's second argument fares no better. It contends that the District Court's instruction to the jury that "[a] breach of contract occurs when a party breaches a duty . . . that results in damages," JA176–77, may have led the jury to think that it could not find bad faith unless RLF proved "additional, unpaid contract damages" beyond the amount already paid under the appraisal award, Op. Br. at 20. That argument fails for two reasons.

First, the charge did not misstate the law. The District Court instructed the jury that, to prevail on a claim of bad faith, RLF had to prove that Lloyds breached the insurance contract. That instruction is correct. Under Virgin Islands law, bad faith requires, among other things, "the existence of an insurance contract between the parties and a breach by the insurer." *Justin,* 670 F. Supp. at 617; *see also Virgin Grand Ests. #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London,* No. 3:21-cv-00074, 2022 WL 4536008, at *8 (D.V.I. Sept. 28, 2022) (dismissing bad faith claim where the insurer "did not breach any contract"). Indeed, "in most normal cases, [] a plaintiff [must] obtain a directed verdict on the contract in order to even get to the jury and make out a successful bad faith claim." *Justin,* 670 F. Supp. at 617.

The District Court next defined breach of contract as "occur[ring] when a party breaches a duty created by an agreement that results in damages." JA177. That

too is an accurate statement of law. *See Phillip v. Marsh-Monsanto,* 66 V.I. 612, 620–21 (V.I. 2017) (adopting the following four elements underlying a breach of contract claim: "(1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages"). Notably, RLF never asked the Court to issue an instruction clarifying that a breach could result in damages for purposes of bad faith even if those damages had already been paid. So, even if RLF now worries that the jury may have read the instruction too broadly, the instruction itself was legally correct. The District Court therefore did not commit any error, much less the sort of error that is "fundamental and highly prejudicial." *Alexander*, 208 F.3d at 427.

Second, even if the phrase "results in damages" had some capacity to confuse, that would not carry the day. We must review the bad faith charge as a whole, not by isolating a single phrase. *Limbach,* 949 F.2d at 1259 n.15. And even an erroneous instruction does not warrant reversal if it was merely a "solitary misstatement of law buried in an otherwise correct legal explanation." *Harvey,* 635 F.3d at 612 (internal quotation marks and citation omitted). Here, beyond the challenged phrase, the District Court gave the jury an extensive, and accurate, charge on bad faith. It explained that bad faith could exist if Lloyds "decided that the claim was valid but refused to pay the claim[,] . . . intentionally refused or failed to investigate whether there was any lawful reason for denying the claim[,] . . . [or] unreasonably and

16

purposefully and in bad faith with[eld] or tr[ied] to evade paying the claim." JA177 (internal quotation marks and citation omitted).

Those instructions directed the jury to the proper questions: whether Lloyds, in fact, denied the claim as to the cottages and, if so, whether it lacked a legitimate basis for doing so. Taken as a whole, then, the charge "fairly and adequately present[ed]" the bad faith claim to the jury. *Donlin,* 581 F.3d at 79 (internal quotation marks and citation omitted).[11]

## III

Because the District Court did not plainly err in instructing the jury, we will affirm the judgment entered on May 13, 2025.

---

[11] RLF also briefly suggests that the verdict form was confusing because it asked the jury to determine "the amount of the Plaintiff's damages," including "Compensatory Damages," even though no unpaid contractual damages remained. Op. Br. at 16. At trial, however, RLF's counsel specifically approved that form and asked the jury to write $174,412.29—the amount paid under the appraisal award—in the "Compensatory Damages" field. Moreover, the form first asked whether Lloyds acted in bad faith and directed the jury to quantify damages only if it answered "yes" to that initial question. JA191–92. The jury answered "no," so it never needed to reach the portion of the form RLF now challenges. JA191.

*Counsel for Appellant*
Jessica C. Tully [Argued]
Tully Ryan

Ryan C. Meade
Ryan Meade Chartered Attorney

*Counsel for Appellee*
Matthew J. Duensing [Argued]
Joseph Sauerwein
Duensing & Casner