

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-19-2008

# Hirst v. Inverness Hotel Corp

Precedential or Non-Precedential: Precedential

Docket No. 07-1277

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Hirst v. Inverness Hotel Corp" (2008). *2008 Decisions.* Paper 438.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/438

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1277
_____

JANET HIRST; DAVID HIRST,

Appellants

v.

INVERNESS HOTEL CORP.,
d/b/a Chenay Bay Beach Resort;
CHENAY BAY BEACH CLUB, INC.;
RANGER AMERICAN OF THE VI, INC.;
PETER LOCKE; DEBI FORBES; VICTORIA LOCKE;
RICHARD LOCKE; R.F. CORP.; 515909 ONTARIO LTD.;
SUN VACATION PROPERTIES CORP.
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. Civil No. 04-cv-00095)
District Judge: Honorable Anne E. Thompson
_____

Argued May 5, 2008
Before: RENDELL, FUENTES, and CHAGARES,
<u>Circuit Judges</u>
(Filed September 19, 2008)

Vincent A. Colianni, Esq.   **[ARGUED]**
Colianni & Colianni
1138 King Street
Christiansted, St. Croix
USVI   00820-0000

*Counsel for Plaintiffs-Appellants*
  *Janet Hirst; David Hirst*

Wilfred A. Geiger, Esq.
Eugenio W.A. Geiger-Simounet, Esq.   **[ARGUED]**
P. O. Box 25749, Gallows Bay
Christiansted, St. Croix
USVI   00824-0000

*Counsel for Defendants-Appellees*
  *Inverness Hotel Corp., d/b/a Chenay Bay Beach Resort;*
  *Chenay Bay Beach Club, Inc.;*
  *Ranger American of the VI, Inc.;*
  *Peter Locke; Debi Forbes; Victoria Locke;*
  *Richard Locke; R.f. Corp.; 515909 Ontario Ltd.;*
  *Sun Vacation Properties Corp.*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

Appellants Janet and David Hirst ("the Hirsts") appeal the final judgment of the District Court in favor of Appellee Ranger American of V.I. ("Ranger") following a jury trial and verdict. The Hirsts contend that the District Court committed legal error at trial by allowing Ranger's president to give improper lay opinion testimony concerning the issue of proximate causation in violation of Federal Rule of Evidence 701. We agree. For the reasons stated below, we will vacate the District Court's entry of judgment and remand for a new trial.

## BACKGROUND

On July 20, 2004, the Hirsts filed a complaint in the District Court of the Virgin Islands against Inverness Hotel Corporation, alleging negligence and loss of consortium in connection with the July 4, 2004, rape of Janet Hirst at the Chenay Bay Beach Resort ("Chenay Bay") in St. Croix. On July 28, 2004, the Hirsts amended their complaint, adding a number of individual and corporate defendants, including Ranger, the security services company employed by Chenay Bay. By the time the case went to trial, Ranger was the only defendant that remained.

Beginning on November 27, 2006, the case was tried before a jury in St. Croix. Over the course of the trial, the jury

3

heard evidence that, on July 4, 2004, after returning from an evening fireworks display, Janet Hirst was raped in her vacation cottage at Chenay Bay by a man wearing latex gloves and a bandana that covered his face. According to Mrs. Hirst, the rapist—who was never found and/or identified—used a grocery bag as a make-shift condom and was careful to wipe down various areas of the room before he fled.

The Hirsts introduced evidence that Chenay Bay had contracted with the defendant, Ranger, to provide nighttime security services for the resort. Ranger was to provide a uniformed security guard every evening between 9:00 p.m. and 1:00 a.m. The guard's duties were outlined in a document drafted by Ranger known as "post orders" (App. 58-60; *see also* App. 272-73) and included, *inter alia*, patrolling the "entire complex" twice an hour "without exhibiting a pattern," monitoring all incoming and outgoing activities "to ensure that unauthorized persons/vehicles refrain from accessing the properties," and escorting late arriving guests to their rooms (App. 60; *see also* 273-74). The post orders also required the security guard to carry a flashlight and a radio.

The night of Mrs. Hirst's rape, the Ranger security guard on duty, Felix St. Rose ("St. Rose"),[1] arrived for his shift "some

---

[1]Select portions of St. Rose's deposition testimony were read into the record, as the Plaintiffs were unable to locate St. Rose

(continued...)

minutes before ten." (App. 254-55.) He was provided with neither a flashlight nor a radio. St. Rose testified that, during his shift, he failed to perform several of the duties enumerated in the post orders. For example, St. Rose patrolled the resort only once an hour, instead of twice an hour as the post orders required. Additionally, St. Rose did not patrol *at all* the area of the resort where Mrs. Hirst was raped. According to St. Rose, he did not patrol the area where the Hirsts' cottage was located because his supervisor told him that the area was "too dark for [his] own safety." (App. 256.)[2] St. Rose believed that "without

---

[1](...continued)
after his deposition to subpoena his live testimony.

[2]From the St. Rose testimony:

> Q:    Are you familiar with Cottage Number 26,
>        where the rape occurred?
>
> A:    No, sir.
>
> Q:    You're not familiar with it?
>
> A:    No.
>
> Q:    Did you patrol in that area?
>
> A:    No, sir.

(continued...)

5

a flashlight or without any light, somebody could jump out and knock [him] down or knock [him] out."  (App. 265)

In addition to Mrs. Hirst and St. Rose, the jury heard from several other witnesses, including Ranger's president, Juan Bravo ("Bravo"), whose testimony is the subject of this appeal. At the very conclusion of Bravo's direct examination,[3] Ranger's counsel asked Bravo whether Ranger could have been able to prevent Mrs. Hirst's rape, immediately prompting an objection. The trial transcript reveals the following exchange:

---

[2](...continued)

Q:     Why not?

A:     Because that is one of the places that was dark.

Q:     Okay.  So before July 4th, before that night, you had never seen Cottage 26?

A:     No, sir.  Not even that night I saw it.

(App. 256-57.)

[3]Because the Hirsts played Bravo's deposition testimony to the jury as part of their case in chief, Ranger contends that its examination of Bravo was technically a cross-examination.  As the trial transcripts refers to Ranger's examination of Bravo as "DIRECT EXAMINATION" (App. 429), we will use the same label to avoid confusion.

Q:     Based on your knowledge of the facts of this case, could Ranger American, within the limited scope of its functions, have been able to prevent the attack against Mrs. Hirst?

[Hirsts' Counsel]: Objection. No foundation. Calls for speculation. Not an expert witness.

The Court:   Well, he's not an expert witness. He's the president of the defendant company, and if he has an opinion when he's being, his company is being sued with regard to this incident, I don't think it's unfair to give him an opportunity to express an opinion with regard to that.

A:     Given the facts that I have been presented, there was no way that this alleged incident would have been prevented by us or by anyone.

The Court: By whom?

A:     By us or by anyone.

7

The Court:  All right.

(App. 432-33.)

After the close of evidence, the jury found that, although Ranger was in fact negligent in providing security services on July 4, 2004, its negligence was not a proximate cause of Mrs. Hirst's rape.  Accordingly, on January 3, 2007, the District Court entered judgment in favor of Ranger.  On January 10, 2007, the Hirsts filed a timely notice of appeal.  We now have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

As recognized above, the Hirsts contend that District Court erred in allowing Ranger's president, Juan Bravo ("Bravo"), to give improper lay opinion testimony in violation of Federal Rule of Evidence 701.  According to the Hirsts, Bravo's testimony was particularly harmful, as he was permitted to express an opinion concerning the very issue upon which the jury ultimately based its verdict: proximate causation. They ask that we vacate the District Court's judgment and remand for a new trial.

In response, Ranger insists that the Hirsts failed to properly preserve their Rule 701 argument in the District Court. According to Ranger, "[t]he objection raised on appeal by appellant is clearly improper as it was not raised at trial."

8

(Appellee's Br. VIII.)  On the merits of the Hirsts' argument, Ranger maintains that the District Court's decision to admit Bravo's opinion testimony was "appropriate" (*id.* at VII) and contends that, in any event, the testimony "had no major effect on the jury verdict" (*id.* at VI.)

## I.    Waiver

At the outset, we find absolutely no basis for Ranger's contention that the Hirsts failed to preserve their Rule 701 argument for appeal.  It could not be more clear from the trial record—and from the Hirsts' direct and accurate citation of the record in their brief (*see* Appellants' Br. 9-10)—that the Hirsts raised a proper objection to the testimony they now challenge on appeal.[4]  To be certain, the relevant transcript excerpt, as cited above, indicates that counsel objected on several grounds to the

---

[4]We note that although the Hirsts clearly identify the specific portion of Bravo's testimony upon which they base their appeal, Ranger centers its waiver argument on an entirely different aspect of Bravo's testimony. (*See* Appellee's Br. 1 (referencing an unrelated exchange between counsel and the Court that occurred at the beginning of Bravo's direct testimony (App. 429), not at the conclusion (App. 432-33).)  It thus appears to the Court that Ranger's waiver argument is, at best, the product of a fundamental misunderstanding and/or misreading of the Hirsts' appeal or, at worst, a deliberate attempt to distort the record.  In either case, the argument has no merit.

question posed. While counsel did not say "improper lay opinion," the stated grounds for his objection (lack of foundation, speculation, and "[n]ot an expert witness") point to the same concerns, as discussed further below.

Counsel's objection provided both Ranger and the Court with sufficient notice of the bases for the objection and an opportunity to correct the alleged error; and the Court's response demonstrates that it was aware of and understood the Hirsts' position.[5] Finding no support in either law or fact for Ranger's argument, we easily conclude that the Hirsts have adequately preserved this issue on appeal.

---

[5]Federal Rule of Evidence 103(a)(1) requires that a timely objection or motion to strike must "stat[e] the specific ground of objection, *if the specific ground was not apparent from the context*." (emphasis added). The Advisory Committee Notes to Rule 103 indicate that the purpose of the specificity requirement is to call the nature of the error "to the attention of the judge, so as to alert him to the proper course of action and enable opposing counsel to take proper corrective measures."

## II.     Federal Rule of Evidence 701

We next address whether Bravo's testimony should have been prohibited under Federal Rule of Evidence 701.  While we generally review a district court's decision to admit or exclude evidence for abuse of discretion, our review is plenary as to the court's interpretation of the Federal Rules of Evidence.  *Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 297 (3d Cir. 2007).

Rule 701, entitled "Opinion Testimony by Lay Witnesses," provides that:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The plain language of Rule 701 establishes that lay opinion testimony must satisfy the criteria set forth in subsections (a), (b), *and* (c) in order to be admissible.   Bravo's testimony satisfies none of these criteria.

11

First, a lay opinion must be rationally based on the witness's perception and "firsthand knowledge of the factual predicates that form the basis for the opinion." *Gov't of V.I. v. Knight*, 989 F.2d 619, 629 (3d Cir. 1993) (citing Fed. R. Evid. 701(a) advisory committee's note); *see also United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002) ("[A] lay opinion must be rationally based on the perception of the witness. This requirement is the familiar requirement of first-hand knowledge or observation."); *cf.* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").[6]

---

[6]The District Court applied this requirement at other points in the trial. When the District Court admitted Dr. Burgess, the Hirsts' rape trauma expert, it explained to the jury:

> Most witnesses who are called to testify in a trial have personal knowledge of the facts about which they're called upon to testify. Someone has to have learned about the incident through their senses, having seen it, heard something, been there.
>
> Expert witnesses are the exceptions to that rule. They're permitted to testify even though they were not present. They know nothing from their own senses of the facts of the case. They're

(continued...)

(App. 164.) Later in Dr. Burgess's testimony, counsel for the Hirsts attempted to solicit the doctor's opinion as to whether or not Mrs. Hirst's rape could have been prevented. Because Dr. Burgess had been admitted strictly as an expert in rape trauma, the District Court found the question to be beyond her expertise. The following exchange occurred:

> [Hirsts]: My question is really, Dr. Burgess, at this juncture, based on what you, know, is there anything Janet Hirst could have done to prevent this incident?
>
> A: No.
>
> Q: You may continue.
>
> [Ranger]: We're going to object to that conclusion. I think that's way beyond her realm.
>
> The Court: I'm going to sustain the objection. The problem with that question is that, obviously, this witness was not there. And she is being asked to give an opinion about an incident she did not witness, was not present, and about which she learned by telephone and in-person interviews

(continued...)

13

Bravo's opinion was not based on his own perception. In his videotaped deposition, which appears to have been played in full to the jury, Bravo clearly testified that he had never been to Chenay Bay (Supp. App. 21-22 ("Q: Have you ever been to Chenay Bay yourself? A: No.")) and that he learned everything about Mrs. Hirst's rape second-hand through either his attorney or Delroy Richards, the vice president of Ranger "in charge of the entire Virgin Islands operation." (Supp. App. 20, 7; *see also* Supp. App. 47.) In fact, Bravo spent almost the entirety of his deposition explaining to the Hirsts' counsel—in no uncertain terms—that he could not adequately answer many of counsel's questions as he knew little about Ranger's Virgin Islands operations, Chenay Bay, its post orders, and/or the circumstances surrounding Mrs. Hirst's rape. (*See, e.g.*, Supp.

---

[6](...continued)
    with the Hirsts back in the United States.

(App. 168.) The excluded question above is nearly identical, in structure, to the question challenged on appeal. (*See* App. 432 ("Q: Based on your knowledge of the facts of this case, could Ranger American, within the limited scope of its functions, have been able to prevent the attack against Ms. Hirst?").) As will be explained above, the reasons the District Court articulated in refusing to permit Dr. Burgess's testimony are among the *very same* reasons the District Court should have sustained counsel's objection to the testimony now challenged on appeal.

14

App. 6-7, 15, 18, 21-48; 49-53, 57, 65, 68-69; 29, 46).[7]  Bravo even complained at the beginning of his live testimony that some of the deposition questions posed to him called for speculation.  Ultimately, it is beyond dispute that Bravo's opinion was not based on his own perception or firsthand knowledge.  Even the way Bravo prefaced his answer to the challenged question ("*Given the facts that I have been presented*, there was no way that this alleged incident would have been prevented by us or by anyone." (App. 433)) supports this conclusion.

Second, lay opinion testimony must be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."  Fed. R. Evid. 701(b).  Bravo's testimony does not meet this standard.  As the Sixth Circuit has recognized, "seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an 'oath helper.'"  *Mitroff v. Xomox Corp.*, 797 F.2d 271, 276 (6th Cir. 1986).  In this case, the question to which the Hirsts' counsel objected at trial called for Bravo, a non-expert, to offer an opinion as to the ultimate issue of causation, and Bravo's response (that "there was no way that this alleged incident would have been prevented by us or by anyone" (App. 433)) provided the jury with little more than a

---

[7]Here, the objection to Bravo's testimony as being without foundation or speculative rings true.

15

self-serving, conclusory opinion as to what result it should ultimately reach. As Bravo's testimony "amount[ed] to little more than choosing up sides, exclusion for lack of helpfulness [wa]s called for by [Rule 701(b)]." Fed. R. Evid. 701 advisory committee's note.[8]

_____

[8]The fact that Bravo's lay opinion testimony touched on an ultimate issue in the case is not, itself, problematic. Rule 704, which governs "Opinion on Ultimate Issue," clearly states that ultimate issue testimony is permissible:

> (a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

> (b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

But even though Rule 704 generally authorizes the admission of opinion testimony on an ultimate issue, the Rule

(continued...)

16

Finally, under Rule 701(c), admissible lay opinion testimony must "not [be] based on scientific, technical, or other specialized knowledge within the scope of Rule 702." While we do not believe that Bravo's opinion was, in fact, based on specialized knowledge (as it was given out of self-interest and without any foundation), Rule 701's final criterion is nevertheless worthy of brief discussion.

Subsection (c) of Rule 701 was added to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in

---

[8](...continued)
makes clear that the proffered testimony must also be "otherwise admissible." As the Advisory Committee Notes to Rule 704 explain:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day.

Thus, a proffered opinion must satisfy the criteria set forth in, *inter alia*, Rule 701 before the court permits a jury to hear it.

17

lay witness clothing" and to "ensure[] that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson." Fed. R. Evid. 701 advisory committee's note. Thus, had Bravo's opinion been based on specialized knowledge, Ranger would have been required to disclose him as an expert and his testimony would have been subject to the reliability requirements of Rule 702. Bravo was not so disclosed, nor was there any attempt to qualify him as an expert at trial. Yet, in the absence of personal perception, an opinion as to whether Mrs. Hirst's rape could have been prevented would have had to depend on, *inter alia*, technical or specialized knowledge of the various security measures Ranger could/should have taken. Not having been qualified as an expert in security (or in any other area for that matter), Bravo should not have been permitted to offer such an opinion. His position as president of Ranger is irrelevant to this analysis. As the Advisory Committee Note to Rule 701 makes clear, a party simply may not use Rule 701 as an end-run around the reliability requirements of Rule 702 and the disclosure requirements of the Rules of Procedure. Preventing such attempts is the very purpose of subsection (c).

## III.  Harmless Error Analysis

Having found that the District Court erred in admitting Bravo's challenged testimony, we must next ask whether the error was harmless.  *Becker v. ARCO Chemical Co.*, 207 F.3d 176, 205 (3d Cir. 2000).  Discretionary evidentiary rulings will give rise to reversible error only where "a substantial right of the party is affected."  *Id.* at 180 (internal quotation marks omitted).[9]  As we have held, this means that we will affirm a District Court's evidentiary ruling, even if it is erroneous, "only if it is highly probable that the error[] did not affect the outcome of the case."  *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 917 (3d Cir. 1985).[10]

---

[9]*See also* Fed. R. Evid. 103(a) (providing that an evidentiary ruling may not be reversible error "unless a substantial right of a party is affected"); Fed. R. Civ. P. 61 ("No error . . . is ground for granting a new trial or for setting aside a verdict . . . unless refusal to take such action appears to the court inconsistent with substantial justice"); 28 U.S.C. § 2111 (appellate court should give judgment "without regard to errors or defects which do not affect the substantial rights of parties").

[10]*Cf. Doty v. Sewall*, 908 F.2d 1053, 1057 (1st Cir. 1990) ("When evidence is charged to have been improperly admitted, any error is more likely to be found harmful, and thus reversible, if the evidence is substantively important, inflammatory,

repeated, emphasized, or unfairly self-serving." (internal
(continued...)

After a thorough review of the trial record in this case, we are not convinced that the District Court's error was harmless. As we have noted above, although the jury found that Ranger was negligent in providing security services on the night of Mrs. Hirst's rape, it found Ranger not liable. Its verdict turned on the very issue as to which Bravo was permitted to give improper lay opinion testimony: proximate causation. The jury quite possibly could have believed that Bravo's opinion was "evidence" relevant to its inquiry[11] and may have relied on the opinion in reaching its verdict. With the overall evidence as to causation presenting a close case, we simply cannot conclude that it is "highly probable" that the error did not affect the jury's verdict. *See Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000) ("This case was factually very close and we are especially loath to regard any error as harmless in a close case, since in

---

[10](...continued)
quotation marks omitted)).

[11]We note here that the District Court's response to counsel's objection—which was heard by the jury, as the objection was not taken at sidebar—could have implied to the jury that Bravo's opinion was in fact relevant, if not significant. In fact, the District Court even prompted Bravo to repeat his overly broad statement that *no one*, not just his company, could have prevented what had happened to Mrs. Hirst.

such a case even the smallest error may have been enough to tilt the balance." (internal quotation marks omitted)).[12]

Thus, because we find that the District Court's error in admitting Bravo's testimony was not harmless, we will grant a new trial.

---

[12]In *Hester*, plaintiff brought a Title VII and § 1981 race discrimination and retaliation suit against her employer. At trial, several of plaintiff's co-workers, who were not involved in the challenged employment decision, speculated that the decision must have been attributable to the plaintiff's race. 225 F.3d at 181. In holding that the coworkers' testimony had been improperly admitted and that its admission constituted reversible error, the Second Circuit explained:

> [T]he likely benefits of lay opinion testimony must outweigh its costs. Lay opinion testimony may be helpful even if it bears on the ultimate issue in the case, but the costs of lay opinion increases and the benefits diminish the closer the opinion approaches the crucial issues in the case. This is because, even where . . . the opinion is accompanied by supporting facts, the risk remains that the opinion may distract jurors from their task of drawing an independent conclusion as to an ultimate issue in the case.

*Id.* at 182 (internal citations and quotation marks omitted; first alteration in original).

21

## CONCLUSION

For the reasons set forth above, we will VACATE the District Court's entry of judgment and REMAND for a new trial.