NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3209

_____

UNITED STATES OF AMERICA

v.

JUANITA L. BERRY,
                                    Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-13-cr-00769-001)
District Judge: Honorable Peter G. Sheridan

_____

Submitted under Third Circuit LAR 34.1(a)
on March 21, 2017

Before: AMBRO, JORDAN and ROTH, Circuit Judges

(Opinion filed: April 30, 2018)

_____

OPINION[*]

_____

ROTH, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Juanita Berry appeals several rulings made by the District Court before, during, and after her trial and conviction for tax evasion and wire fraud. She also appeals the District Court's calculation of the losses incurred by her actions and its resultant effect on her sentence. For the reasons set forth below, we will affirm on all counts.

I.[1]

Berry formed J. Starr Communications, Inc., in 2003. That year, Berry filed personal and corporate tax returns, both of which reflected J. Starr's income. Berry failed, however, to fully satisfy her tax obligations, and the IRS periodically sent her reminders of her overdue taxes. In 2005, J. Starr signed a consulting services contract with the telecommunications service company, Telamon, for Berry to act first as a sales representative and later as a manager of Telamon's East Coast operations. In this capacity, Berry was responsible for overseeing field installation of new telecommunications parts and removal of old parts for AT&T, one of Telamon's clients. Berry would facilitate shipment of new parts and receipt of removed parts at a Telamon facility located in Dayton, New Jersey.

Berry suffered financial difficulties through this period, filing petitions for personal bankruptcy in 2006 and 2010. Both petitions were dismissed for numerous reasons, among which was Berry's failure to submit adequate income tax returns. In addition, ATM records demonstrate that she withdrew large sums of cash from the J. Starr account at various casinos.

---

[1] As Berry was ultimately convicted, the facts and evidence are taken in the light most favorable to the government. *United States v. Ozcelik*, 527 F.3d 88, 93 (3d Cir. 2008) (citation omitted).

Berry responded to these financial difficulties by directing workers at the Telamon facility in Dayton to sell new and used parts, without Telamon's knowledge or authorization, to West World Telecomm Corporation. West World logged each product received into its internal database. J. Starr shipped approximately 35,000 products to West World and received over $3.5 million in payments; 672 of these were new products as opposed to removed equipment. West World twice prepaid J. Starr for these shipments, executing two documents, titled "promissory notes." Berry failed to report the income she received from these sales to West World on her tax returns in 2010 and 2011.

Berry was charged with four substantive counts of wire fraud and two counts of tax evasion in an indictment returned on September 22, 2015. In preparation for trial, the government moved in limine to introduce numerous documents from Berry's financial history, including (1) her tax returns from 2003, (2) the two bankruptcy petitions, filed in 2006 and 2010, (3) IRS records, demonstrating Berry's failure to file tax returns between 2004 and 2009, (4) tax returns, prepared by her accountant but never filed, for the years between 2004 and 2009, and (5) bank records showing that Berry made large withdrawals of cash from ATMs at various casinos. The District Court excluded the documents pertaining to Berry's failure to file tax returns from 2004 through 2009, but it admitted Berry's 2003 tax returns, Berry's bankruptcy petitions, and the bank records. Berry, in turn, challenged the government's attempts to introduce evidence from West World's internal database, arguing that such evidence was not properly admitted unless West World could provide forensic proof of the records' authenticity. The District Court

3

admitted the evidence, finding that testimony from West World employees was sufficient to establish authenticity. Berry indicated her intent to challenge the authenticity of West World's records by introducing testimony from Anthony Brown, an expert in the common practices of the telecommunications industry.

Trial began on November 17, 2015. After the government rested its case, Berry began to call her witnesses, intending to call Brown at the end of her defense. However, because the trial took place during the week of Thanksgiving, the District Court excused the jury for five days, recommencing trial on November 30. On December 1, Berry requested a one-day continuance of the proceedings to secure Brown's attendance.[2] The District Court denied the continuance on the grounds that Berry could not guarantee Brown's attendance on December 2 and that Berry had not proffered the substance of Brown's testimony. Berry thereafter rested. In charging the jury, the District Court did not instruct that as a matter of law the documents titled "promissory notes" were loans and thus not income for tax purposes, instead allowing the jury to decide the contested question.

Berry was convicted on all counts. In calculating Berry's sentence, the District Court relied on a presentence report which calculated the loss attributable to Berry's actions based on the $3,510,885 that West World paid to J. Starr.[3] From this figure, the Probation Office subtracted $70,000 to reflect telecommunications equipment that Berry

---

[2] Berry states that Brown was unable to fly out from California on either November 30 or December 1. Appellant Br. at 14.

[3] The report treated the payment from West World to Berry as representative of the loss sustained by Telamon due to its inability to sell the parts that Berry stole.

4

herself had purchased to sell to West World.  The new total of $3,440,885 resulted in a 16-level increase of her base offense level.  Berry contested this determination, arguing that the loss amount should have been limited to the four wire transfers charged—totaling $32,350.  In the alternative, Berry argued that the loss amount should have been limited to the value of the new equipment, rather than including the removed equipment— totaling $558,447.  Rejecting both arguments, the District Court applied a 16-level increase to Berry's base offense level and sentenced Berry to 60 months' incarceration, three years of supervised release, a special assessment, and $3,440,885 in restitution. Berry appealed.

## II.[4]

Berry raises five issues on appeal.  First, she challenges the District Court's admission of her 2003 tax return, her bank records demonstrating cash withdrawals at casinos, and her dismissed bankruptcy petitions.  Second, she argues that the District Court erred in admitting West World's records without requiring physical or forensic proof of authenticity.  Third, she asserts that the District Court abused its discretion in denying her request for a one-day continuance to secure the attendance of Brown. Fourth, she protests that the District Court was under an obligation to sua sponte instruct the jury that the documents entitled "promissory notes" were loans, and not income.

---

[4] The District Court had jurisdiction over Berry's criminal case pursuant to 18 U.S.C.    §
3231.  We have jurisdiction over Berry's appeal of her conviction pursuant to 28 U.S.C. §
1291, and over Berry's appeal of her sentence pursuant to both 28 U.S.C. § 1291 and
18 U.S.C. § 3742(a).

5

Fifth, and finally, she argues that the District Court erred in relying on the loss amount in the presentence report. We address each contention in turn.

A.

We review a district court's admission of evidence for abuse of discretion,[5] and find none in the District Court's admission of documents related to Berry's financial history as evidence of motive, intent, or lack of accident pursuant to Rule 404(b) of the Federal Rules of Evidence. Berry asserts that her 2003 return was of no probative value and was unduly prejudicial insofar as it impermissibly suggested that she failed to file taxes from 2004 to 2009. We disagree; her 2003 return was clearly relevant to demonstrate her knowledge of her tax liabilities with respect to J. Starr, supporting a finding of willfulness.[6] Such evidence was appropriately admitted. Similarly, evidence of Berry's withdrawals at casinos was clearly relevant to demonstrating her motive to commit wire fraud and tax evasion insofar as it was probative of her financial circumstances.[7] While the jury may have inferred immorality from Berry's frequent gambling, any such prejudice did not "substantially outweigh" the probative value of

---

[5] *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 225 (3d Cir. 2008) (citation omitted). While our review is plenary as to the district court's interpretation of the Federal Rules of Evidence, *see id.*, Berry does not contend that the District Court here erred in interpreting any rule.

[6] *See United States v. Daraio*, 445 F.3d 253, 264 (3d Cir. 2006) ("In cases involving violations of federal tax laws such as tax evasion, a defendant's past taxpaying record is admissible to prove willfulness circumstantially.") (internal quotation marks, alteration, and citation omitted).

[7] *See United States v. Saada*, 212 F.3d 210, 223-24 (3d Cir. 2000) (finding that evidence of a defendant's financial motive to commit the crime was appropriately admitted under Rule 404(b)).

such records; accordingly, we find no abuse of discretion in their admission.[8]  We find the same to be true of Berry's dismissed bankruptcy petitions; while Berry points to several other potential explanations for the dismissal of her petitions, the determination of whether to credit such alternatives was properly left to the jury.

Accordingly, we will affirm the District Court's ruling admitting evidence of Berry's 2003 tax return, cash withdrawals at casinos, and dismissed bankruptcy petitions.

B.

We also find no abuse of discretion in the District Court's determination that the testimony of West World employees was sufficient to establish the authenticity of West World's purchase orders as business records.  At a pretrial evidentiary hearing, the government introduced the testimony of three West World employees, including West World's Chief Financial Officer Bernard Wayne Fitzhugh, to authenticate the records. Rule 803 expressly provides that documents may be established as business records by "the testimony of the custodian [of such records] or another qualified witness . . .."[9] Fitzhugh confirmed that the records produced were "the type of purchase order that is created in the ordinary course of business on a daily basis" and that "the information reflected in [the records] is kept in the . . . database in the ordinary course of business[.]"[10]  After listening to Fitzhugh's full testimony, the District Court determined that "Mr. Fitzhugh is more than qualified, with regard to being CFO of the company,

---

[8] Fed. R. Evid. 403.
[9] Fed. R. Evid. 803(6)(D).
[10] App. 1455.

[because] he knows how the . . . system works . . . ."[11]  We conclude that the District Court correctly found that Fitzhugh was a qualified witness to testify under Rule 803(6)(D).

## C.

Turning next to Berry's contention that the District Court's denial of a one-day continuance was reversible error, our review is for an abuse of discretion.[12]  Trial courts possess broad discretion in setting the schedule and format of trial.[13]  Vacatur based on the erroneous denial of a continuance is only appropriate where "the denial was arbitrary and it substantially impaired the defendant's opportunity to receive a fair [trial]."[14]  We find that Berry has not adequately established that the denial of her request for a one-day continuance "substantially impaired" her rights; as the government notes, Berry fails to explain the substance of Brown's testimony or how it would have strengthened her challenge to the accuracy of West World's records—an issue as to which Berry rigorously cross-examined the government's witnesses.  Without any evidence that the denial of a continuance substantially impaired Berry's defense, we find no abuse of discretion in the District Court's decision.

## D.

Berry next contends that the District Court erred in failing to sua sponte instruct the jury that the documents, titled "promissory notes," were loans, and thus not taxable

---

[11] App. 1490.
[12] *United States v. Olfano*, 503 F.3d 240, 245 (3d Cir. 2007) (citation omitted).
[13] *See In re Baldwin*, 700 F.3d  122, 129 (3d Cir. 2012).
[14] *Olfano*, 503 F.3d at 246 (citations omitted).

8

income.  Because such an instruction was not requested before the District Court, our review is for plain error.[15]  Berry acknowledges that the nature of the documents was contested at trial; West World employees testified that the documents were not loans, and represented only the prepayment for certain shipments Berry promised.  She nonetheless claims plain error, however, based solely on the fact that the documents were titled "promissory notes" and described West World and Berry as "Lender" and "Borrower," respectively.  In light of such unambiguous language, Berry asserts, the employees' testimony was impermissible parol evidence.  We disagree; Pennsylvania's parol evidence rule expressly allows for admission of parol evidence where a contract "does not state fully the agreement among the parties."[16]  In light of the testimony that the documents in question did not fully represent the agreement between West World and Berry, we see no plain error in the District Court's decision to allow the jury to determine whether the documents constituted loans or prepayment.

E.

Finally, we address Berry's contention that the presentence report used by the District Court at sentencing inaccurately overstated the amount of the loss attributable to her actions.  We review a district court's factual findings supporting loss calculations for clear error, but review de novo its interpretation of what constitutes loss under the

---

[15] Fed. R. Crim. P. 52(b).
[16] *Mellon Bank Corp. v. First Union Real Estate Equity and Mortgage Investments*, 951 F.2d 1399, 1405 (3d Cir. 1991) (quoting *Fountain Hill Millwork Building Supply Co. v. Belzel*, 587 A.2d 757, 761 (Pa. 1991)).

Sentencing Guidelines.[17]  Exactitude is not required; rather, a district court "need only make a reasonable estimate of the loss."[18]

Here, the presentence report recommended, and the District Court accepted, that the loss amount was equal to the fair market value of the goods that Berry improperly sold to West World.  From the $3,510,885 of products West World purchased from Berry, the District Court subtracted the $70,000 of products Berry lawfully obtained from another supplier, Hiller.  Berry maintains that this was error, raising four arguments.  First, she claims that the loss should have been limited to the amounts of the four wire transfers charged in the superseding indictment, which totaled far less than the value of all goods Berry shipped to West World.  We have rejected such narrow definitions of loss, however,[19] and thus see no merit to this argument.

Second, Berry asserts that the District Court failed to account for any other sources where she could have bought the parts.  As the government properly notes, however, the evidence establishes that Hiller was Berry's only other source of goods; neither before the District Court nor on appeal does Berry even allege that she had another source for her materials.

Third, Berry argues that the loss calculation should have been limited to the new parts she sold to West World, claiming that the contracts between AT&T and Telamon

[17] *United States v. Free*, 839 F.3d 308, 319 (3d Cir. 2016).

[18] *United States v. Ali*, 508 F.3d 136, 145 (3d Cir. 2007) (quoting U.S.S.G. § 1B1.1, app. n.3(C))

[19] *United States v. Siddons*, 660 F.3d 699, 704 (3d Cir. 2011) ("[D]etermination of loss . . . is never confined to the date of the charged mailing or wiring, but always encompasses all relevant conduct that was part of the same course of conduct or common scheme or plan.") (internal quotation marks and citation omitted).

did not reserve any ownership rights for Telamon in the removed equipment. However, there existed conflicting evidence in the record on this point; the government introduced testimony from a Telamon employee, as well as certain documentary evidence, showing that AT&T and Telamon subsequently agreed that Telamon would retain ownership of removed equipment. Although Berry argues about the strength of this evidence, it was not clear error for the District Court to credit it and thus find that the value of the removed equipment was also a loss incurred by Telamon.

Fourth, and finally, Berry protests that the District Court failed to account for depreciation by relying solely on the prices negotiated between Berry and West World. However, the Sentencing Guidelines expressly authorize courts to rely on the "fair market value of the property unlawfully taken."[20] We have affirmed that, while not dispositive, "[e]vidence of a contract price may be relevant to the issue of fair market value . . . ."[21] Aside from her vague assertion that some depreciation occurred, Berry has not provided any evidence that the contract price she negotiated with West World overvalued the equipment in any way.

We thus find no error in the District Court's calculation of the loss amount sustained by Berry's fraudulent activity.

III.

For the foregoing reasons, we will affirm both the judgment of conviction and the judgment of sentence of Juanita Berry.

---

[20] U.S.S.G. § 2B1.1, comment n.3(C)(i).

[21] *Catlos Sys., Inc. v. Nat'l Cash Register Corp.*, 670 F.2d 1304, 1306 (3d Cir. 1982).