**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1140

_____

THREE RIVERS HYDROPONICS, LLC,

Appellant

v.

FLORISTS' MUTUAL INSURANCE COMPANY and
THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. No. 2-15-cv-00809)
District Judge:  Honorable Mark R. Hornak

_____

Submitted under Third Circuit LAR 34.1(a)
on January 12, 2023

Before: JORDAN, PHIPPS and ROTH, <u>Circuit Judges</u>

(Opinion filed August 29, 2023)

_____

OPINION[*]

_____

ROTH, <u>Circuit Judge</u>

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Three Rivers Hydroponics, LLC (TRH) contends that Florists Mutual Insurance Company (Florists) and its reinsurer, the Hartford Steam Boiler Inspection and Insurance Company (HSB), breached their contracts and acted in bad faith by denying coverage for an equipment breakdown that resulted in crop loss. TRH appeals the District Court's dismissal of HSB from the suit, its preclusion of witness testimony, and its grant of Florists's summary judgment motion as to all remaining claims. For the reasons discussed below, we will affirm.

**I.**

TRH owned and operated a hydroponic basil-farming greenhouse. It used an ozone-based water sterilization system (ozone system), which has, in part, an ozone generator and an oxidation reduction potential controller (ORP controller). The ORP controller used a sensor to ensure a set ozone level (ORP sensor).

Florists insured TRH. The insurance policy covered crop loss, unless a "mechanical breakdown" caused or resulted in the loss.[1] The policy also included an equipment breakdown endorsement, which provided that Florists "will pay for loss caused by or resulting from an 'Accident'" to the ozone system components.[2] This endorsement defined "Accident," in part, as "direct physical loss [caused by] mechanical breakdown."[3] This loss included "'perishable goods' due to spoilage,"[4] but excluded loss due to design errors, poor workmanship, inherent and latent defects, and faulty materials causing loss or

---

[1] Appx. 2783
[2] Appx. 2960.
[3] Appx. 2960.
[4] Appx. 2960–61.

damage. HSB reinsured this equipment breakdown coverage under a reinsurance agreement.[5] HSB and Florists entered into this reinsurance agreement before TRH was a Florists policyholder.

In July 2014, TRH filed an insurance claim with Florists, reporting that there were "equipment damages to Ozone System" because "something failed and caused a small explosion/fire in the equipment[, but] [TRH] was able to shut it down before it caused any major damage beyond the actual piece of equipment."[6] TRH also reported that this incident "resulted in Crop loss."[7]

Florists, with HSB's help, investigated the claim, which included several onsite inspections of the ozone system. Florists first retained a fire and explosion expert who confirmed that a fire had occurred and recommended Florists retain an electrical engineer. Florists then hired an electrical engineer who determined that the ozone generator was damaged. The engineer found that operator error, incorrectly sized equipment, or defective equipment—and not a failed ozone generator—caused the damage to the crops. TRH disagreed with this assessment, arguing that a failure with the ozone system caused the crop loss. To investigate this claim further, Florists arranged for the manufacturer of the ozone system to inspect TRH's system. TRH, however, did not allow the manufacturer to perform the inspection.

---

[5] A treaty reinsurance agreement "insure[s] an entire block of insurance business (both existing policies and 'as yet unwritten' policies)." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 283 n.1 (3d Cir. 2010).
[6] Appx. 2976.
[7] Appx. 2978.

3

Florists then provided a check to TRH for the cost of the ozone generator and requested that the manufacturer inspect the system. A couple weeks later, Florists followed up to see if TRH had had the system inspected. TRH replied that it was "waiting for a third party evaluation from a leader in water treatment in the United States."[8] A few hours later, TRH responded again, explaining that it was not accepting the check as it "only represents a minimal part of the damages caused by the equipment failure which [its] insurance is to cover as well as the crop loss as a direct result of this malfunction."[9] Florists responded that it had not yet denied TRH's claim because it was still investigating what caused the crop loss. Florists followed up with TRH two more times but did not receive a response. By the third follow-up, Florists requested that TRH submit any evidence it had linking the ozone system to its crop loss. A few weeks later, TRH finally agreed to have the manufacturer inspect the system.

Based on its inspection, the manufacturer provided TRH with a verbal report that it determined that an incorrectly installed pipe caused water to go into the ozone generator, which in turn caused the fire. It also determined that the ozone generator was not the cause of the crop loss because that piece of equipment would stop ozone production as soon as fire damaged it. It could not, however, determine whether any problem with the ORP controller may have caused the crop loss.

Florists then opened an equipment-breakdown claim to investigate whether a breakdown of the ORP controller caused the crop loss. Florists and HSB retained a

---

[8] Appx. 3507.
[9] Appx. 3509.

greenhouse engineer to inspect the ozone system and evaluate the ORP controller. After this inspection, Florists determined that there was no evidence that a covered accident caused the crop loss. Florists then denied coverage (beyond replacing the ozone generator). TRH maintains that a breakdown of either the system's ORP sensor, ORP controller, or both caused the crop loss.

TRH sued Florists, alleging breach of contract and bad faith; TRH sought consequential damages based on the alleged breach. TRH later filed an amended complaint adding HSB as a defendant and a civil conspiracy claim against both Florists and HSB. The operative complaint alleges that TRH's crop failed because of the ORP controller's mechanical failure before the fire. HSB moved to dismiss on all counts, which the District Court granted. TRH moved to dismiss the civil conspiracy claim, which the District Court also granted.

Florists then filed a motion in limine to preclude TRH from presenting the testimony of its expert witness, David Greenway. The District Court granted this motion, finding that Greenway lacked qualifications and reliability to offer his opinions as an expert. The District Court also precluded the testimony of witness Donald Lanini, concluding that his testimony included opinions that he was unqualified to make.

Florists filed a motion for summary judgment, which the District Court granted. It found that TRH failed to meet its burden to prove that Florists breached the insurance contract and denied coverage in bad faith. TRH appealed.

**II.**[10]

TRH appeals the District Court's (1) grant of HSB's motion to dismiss, (2) preclusion of witness testimony, and (3) grant of Florists's motion for summary judgment. For the reasons discussed below, we will affirm the orders of the District Court.

*A. The District Court did not err in granting HSB's motion to dismiss.*

TRH appeals the District Court's dismissal of HSB from the suit. We exercise "plenary review over a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6)."[11] Construing all allegations as true and in the light most favorable to the plaintiff,[12] we find that the District Court did not err in dismissing HSB as TRH failed to state plausible claims for both breach of contract and bad faith.

1. <u>Breach of Contract</u>

Under Pennsylvania law, to state a claim for breach of contract a plaintiff "must establish '(1) the existence of a contract, . . . (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'"[13] Privity of contract must exist for a defendant to be liable for a breach.[14] In other words, both parties must be parties to the contract.[15] In

---

[10] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

[11] *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).

[12] *Id.*

[13] *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (second alteration in original) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

[14] *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991), *aff'd*, 618 A.2d 395 (Pa. 1993).

[15] *Id.*

the exceptional circumstance, however, privity need not exist if a party is a third-party beneficiary to the contract.[16] A party is a third-party beneficiary if

> both parties to the contract express an intention to benefit the third party in the contract itself, *unless*, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.[17]

TRH does not dispute that it is not a party to the reinsurance agreement between Florists and HSB. It does, however, argue that it is a third-party beneficiary. We disagree.

TRH suggests that, "[u]nlike traditional reinsurance agreements," HSB's direct dealings with the "customer," *i.e.*, TRH, and its oversight of the claim dispute showed that "HSB functioned as the direct insurer."[18] This argument holds no weight as it would be no different than if Florists had contracted with an independent claims adjuster. In other words, outsourcing the claim adjustment function does not manifest an intent to benefit as an individual policyholder.

Because TRH is not a third-party beneficiary to the reinsurance agreement, the District Court correctly found that TRH failed to allege a plausible breach of contract claim against HSB.

### 2. Bad Faith

To state a claim of bad faith pursuant to 42 Pa. C.S. § 8371, an insured must show that the *insurer* (1) had no reasonable basis for denying benefits under the policy, and (2)

---

[16] *Scarpitti v. Weborg*, 609 A.2d 147, 150–51 (Pa. 1992).
[17] *Id.* (citations omitted).
[18] Appellant Br. at 52.

knew or recklessly disregarded this lack of reasonable basis.[19] To determine whether a party is an insurer, courts must consider "(1) the extent to which the company was identified as the insurer on the policy documents; and (2) the extent to which the company acted as the insurer."[20]

HSB is not TRH's insurer. HSB is not mentioned in the policy between Florists and TRH. Indeed, the facts alleged do not suggest that HSB acted as TRH's insurer but show that it merely assisted with the claims adjustment. A claims adjuster is not an insurer under the statute. HSB cannot be considered an insurer under § 8371.

B.   *The District Court did not abuse its discretion by precluding the testimonies of TRH's witnesses.*

TRH contends that the District Court abused its discretion by precluding its witnesses from offering certain testimony. We review a district court's evidentiary rulings for abuse of discretion.[21] A district court abuses its discretion when its finding "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."[22]

1.   Expert Witness David Greenway

---

[19] *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005).

[20] *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 498 (Pa. Super. Ct. 2004).

[21] *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008); *Donlin v. Philips Lighting N. Am*, 581 F.3d 73, 80 (3d Cir. 2009).

[22] *Pineda*, 520 F.3d at 243 (quoting *In re TMI Lit.*, 193 F.3d 613, 666 (3d Cir. 1999)).

TRH argues that the District Court abused its discretion by precluding Greenway "from testifying to or offering an opinion on . . . the probable cause of the crop failure as it relates to the ORP controller [and the] damage to the oxygen concentrator."[23] We disagree.

Under Federal Rule of Evidence 702, a witness cannot provide expert testimony unless:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

We have summarized this rule to mean that expert testimony must (1) be qualified, (2) be reliable, and (3) assist the trier of fact.[24]

Here, the District Court did not abuse its discretion in finding Greenway unqualified. True, Greenway is a chemical engineer who has designed ozone systems for use in commercial hydroponic greenhouses, but he admitted himself that he was unqualified to testify about how the ORP controller functioned. Based on Greenway's admission, the District Court did not improperly conclude that "[i]t would be illogical to let Greenway testify as an expert regarding a topic on which he has no expertise."[25]

2. <u>Lay Witness Donald Lanini</u>

---

[23] Appx. 28.

[24] *Pineda*, 520 F.3d at 244.

[25] Appx. 27. The District Court also precluded Greenway's testimony because it was unreliable. Because we find his testimony precluded based on its lack of qualification, we need not determine whether it is also unreliable.

TRH argues that the District Court abused its discretion in finding that Lanini was unqualified to provide his opinion on the cause of the crop loss. We disagree.

A party may not offer "an expert witness in the guise of a layperson."[26] Under Rule 701, lay opinion testimony is admissible if it is "rationally based on the witness's perception, . . . helpful to clearly understand[] the witness's testimony or to determin[e] a fact in issue[,] and . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Here, Lanini declined to testify as an expert witness and thus qualifies only as a lay witness. Thus, TRH's contention that he satisfies the qualification of an expert is irrelevant as Rule 702 pertains to expert—not lay—witnesses.[27] Since TRH could offer Lanini only as a lay witness, any testimony that would require expert qualifications under Rule 702 is inadmissible. The only testimony TRH sought from Lanini was his opinion about whether a mechanical breakdown caused the crop loss. This opinion is barred by Rule 702 as it required specialized knowledge about the system's function, operation, and how to determine that a mechanical breakdown had occurred.

*C. The District Court properly granted Florists's motion for summary judgment.*

TRH asserts that the District Court erred in granting summary judgment for the remaining breach of contract and bad faith claims and for consequential damages based on breach of contract.[28] Our review of a district court's order granting summary judgment is

---

[26] *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 227 (3d Cir. 2008).
[27] *See* Fed. R. Evid. 702.
[28] Appellant Br. at 23.

plenary.[29]  We view the facts and make all reasonable inferences in the non-movant's favor.[30]  A motion for summary judgment should be granted if "the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."[31]

### 1. Breach of Contract

TRH contends that the District Court erred by finding TRH failed to meet its burden in establishing a prima facie case that Florists breached the insurance contract.  We disagree.  In insurance contract disputes, the insured has "[t]he burden of proving that a particular claim falls within the coverage of a policy."[32]

TRH's claim—that a crop loss resulted from a covered mechanical breakdown— would appear to fall within the policy as the policy covers loss resulting from mechanical breakdown in the ozone system.  However, the admissible evidence that TRH presented to show that this type of mechanical breakdown occurred and caused the crop loss was speculative at best and included no admissible expert testimony.  Determining whether a breakdown of the ozone system occurred and then caused crop loss is highly technical and requires expert guidance.  We thus affirm the District Court's finding that TRH failed to meet its burden to establish a prima facie case that Florists breached the insurance contract.

### 2. Bad Faith

---

[29] *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418 (3d Cir. 2013).
[30] *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 266–67 (3d Cir. 2005).
[31] *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).
[32] *Jacobs Constructors, Inc. v. NPS Energy Servs.*, 264 F.3d 365, 376 (3d Cir. 2001); *see also Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966).

11

TRH argues that the District Court erred in finding TRH failed to show that there is a genuine issue of material fact as to its bad faith claim. Again, we disagree.

Under Pennsylvania law, to recover on a bad faith claim, the plaintiff must show by clear and convincing evidence that the insurer (1) "did not have a reasonable basis for denying benefits under the policy," and (2) "knew of or recklessly disregarded its lack of a reasonable basis in denying the claim."[33]

TRH asserts facts that, even if supported by the record, fall woefully short of the clear and convincing evidence needed to meet its burden to show Florists did not have a reasonable basis for denying benefits at trial.[34] Florists quickly investigated TRH's claim, hired several experts with specialized experience, continued its investigation when TRH pushed back on its initial findings, and paid on the claim for the replacement generator that the policy did cover; this record supports a finding that Florists conducted a thorough investigation. Because this thorough investigation resulted in a finding that there was no

---

[33] *Nw. Mut. Life Ins. Co.*, 430 F.3d at 137.

[34] These facts include (1) that Florists had a "motive of self-interest to limit their risk of increased costs" and thus used its own consultants rather than TRH's preferred consultants; (2) that Florists withheld a conclusion from an expert that the ORP Sensor was the cause of the crop losses, which is directly contradicted by the record; (3) that Florists "promised" that it would have the system repaired without pointing to evidence of this alleged promise; (4) inadmissible settlement negotiations; (5) that the representative from the manufacturer provided only a verbal, not a written, report; and (6) unsubstantiated allegations that Florists's expert manufactured his conclusion. Appellant Br. at 33–41.

evidence that a covered accident caused the crop loss, we find Florists had a reasonable basis to deny benefits.[35]

### III.

For the reasons stated above, we will affirm the Orders of the District Court.

---

[35] TRH also claims that the District Court erred in finding that TRH failed to meet its burden of proving consequential damages. Consequential damages are available if they resulted from a breach of contract, were foreseeable, and were contemplated when forming a contract. Because we find that TRH has failed to establish a prima facie case for its breach of contract claim, we do not reach this issue.