**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1757
_____

UNITED STATES OF AMERICA,

v.

PATRICK WALKER,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cr-00190-001)
District Judge:  Hon. Gerald J. Pappert
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 9, 2020

Before: McKEE, BIBAS, and FUENTES, *Circuit Judges*.

(Filed: August 28, 2020)

_____

OPINION[**]
_____

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Patrick Walker appeals his convictions for bribery[1] and attempted possession with intent to distribute marijuana.[2] He contends that (i) the evidence presented at trial was insufficient to prove attempted possession with intent to distribute marijuana; (ii) it was error to admit a law enforcement agent's "undesignated expert" testimony; and (iii) the Government failed to properly authenticate two exhibits. For the following reasons, we will affirm.

## I. Background

In August 2016, law enforcement agents observed a United States mail carrier provide Walker with a suspicious package.[3] Agents did not immediately arrest Walker or the mail carrier to avoid compromising their then-pending, separate investigation.

In January 2017, law enforcement agents questioned the mail carrier. Agents uncovered that, within the past several months, the mail carrier diverted numerous packages to Walker in exchange for money.[4] The packages were not addressed to Walker, but were instead addressed elsewhere. Agents also uncovered that Walker directed the rerouting of the packages by calling the mail carrier to identify packages that should be diverted and arranging a pick-up location on the mail carrier's postal route. After

---

[1] 18 U.S.C. § 201(b)(1)(A), (C).
[2] 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(D).
[3] We will refer to Charles Walker as the "mail carrier" to avoid confusion with Appellant.
[4] Indeed, the mail carrier admitted to diverting two packages to Walker on the day he was questioned by agents.

confessing to his role in this offense, the mail carrier agreed to cooperate with the Government.

As part of his cooperation, agents began monitoring and recording the mail carrier's communications with Walker. Soon after, Walker called the mail carrier to obtain his work schedule and provided details as to a package he was expecting. On January 12, 2017, agents identified the package, applied for a search warrant, and, upon searching the package, recovered marijuana. Over the coming weeks, Walker called and texted the mail carrier to coordinate delivery of several additional packages.

Agents seized three packages containing marijuana on February 9, 2017 and, on February 10, 2017, attempted a controlled delivery of those packages. The mail carrier called Walker and suggested a location to meet and deliver the packages. Walker, however, changed the meeting location and asked the mail carrier what he was driving. Because the mail carrier was not driving his usual postal vehicle, Walker became suspicious that he was being set up. Nevertheless, both proceeded to meet at Walker's suggested location. Walker, however, was not present and again changed the meeting location. The mail carrier then informed Walker that if he wanted the packages, he would have to meet at another location. Despite two subsequent phone conversations, Walker never showed up.

Walker was indicted on one count of bribery and two counts of attempted possession with intent to distribute marijuana, based on the package recovered in January 2017 and the February 10, 2017 packages that were the subject of the attempted controlled delivery.

At trial, the Government presented testimony from the mail carrier as to his conversations and interactions with Walker. Several federal agents involved in the

3

investigation into Walker and the attempted controlled delivery also testified, including Homeland Security Investigations Special Agent Jeffrey Kuc. Additionally, the Government introduced the mail carrier's personnel file and package tracking records through the testimony of Girard Carrozza, a postmaster with the United States Postal Service.

A jury acquitted Walker on the charge of attempted possession with intent to distribute marijuana as to the January 2017 package, but convicted him of bribery and attempted possession with intent to distribute marijuana as it related to the packages involved in the February 10, 2017 attempted controlled delivery. This appeal followed.

## II. Discussion

Walker brings three challenges to his conviction. First, he argues that the Government failed to present sufficient evidence to establish that he took a "substantial step" toward completing the crime of possession with intent to distribute marijuana. Second, Walker challenges Agent Kuc's testimony as "undesignated expert testimony" that was irrelevant and unfairly prejudicial.[5] Lastly, he argues that the District Court erred in admitting the mail carrier's personnel records and a spreadsheet reflecting packages delivered to Walker during the relevant period because the documents were not properly authenticated.

---

[5] Walker Br. 5.

## A. Sufficiency of the Evidence

The evidence at trial was sufficient to show that Walker took a substantial step toward possessing the packages involved in the attempted controlled delivery.

"We review sufficiency of the evidence 'in the light most favorable to the prosecution' to determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[6]  The Court must "uphold the jury's verdict unless it 'fall[s] below the threshold of bare rationality.'"[7]  And "[r]eversing the jury's conclusion simply because another inference is possible—or even equally plausible—is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges."[8]

A person is guilty of an attempt to commit a crime when the defendant "(1) acted with the requisite intent to violate the statute, and (2) performed an act that, under the circumstances as he believes them to be, constitutes a substantial step in the commission of the crime."[9]  Walker does not contest the intent element; rather, he claims only that the Government failed to prove that he took a substantial step toward possessing the marijuana involved in the attempted controlled delivery.  As relevant here, the "substantial step" element requires something more than "mere preparation" but falls short of completion of the offense.[10]

---

[6] *United States v. Garner*, 915 F.3d 167, 169 (3d Cir. 2019) (quoting *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424–25 (3d Cir. 2013) (en banc)).
[7] *Id.* (alteration in original) (quoting *Caraballo-Rodriguez*, 726 F.3d at 431).
[8] *Caraballo-Rodriguez*, 726 F.3d at 432.
[9] *United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006).
[10] *United States v. Yousef*, 327 F.3d 56, 134 (2d Cir. 2003).

Walker argues that he did not take a "substantial step" toward possession of the February 10 packages because he took no action to meet with the mail carrier to collect the packages. The record belies his claim. For days leading up to the attempted controlled delivery, Walker called and texted the mail carrier seeking delivery of packages containing marijuana. He provided the mail carrier with specific details regarding the packages and instructions as to their delivery. On the day of the attempted controlled delivery, Walker and the mail carrier engaged in numerous phone calls, Walker suggested two different locations for their meeting, and he informed the mail carrier that he was in a store waiting on him. That Walker failed to appear at the last agreed upon location and take possession of the drugs because of his suspicions does not undermine all of the other actions that he took in an attempt to possess the packages.[11]

Accordingly, we find that the evidence was sufficient for the jury to find that Walker attempted to possess marijuana on February 10, 2017.[12]

_____

[11] *See United States v. Pennyman*, 889 F.2d 104, 107 (6th Cir. 1989) ("We conclude that a defendant may be found to have taken a 'substantial step' for the purpose of an *attempt conviction* though he or she has failed to gain possession of drugs or 'sham' drugs.").
[12] *See United States v. Nestor*, 574 F.3d 159, 161–62 (3d Cir. 2009) (finding that the defendant's posting of an advertisement on Craigslist seeking sexual contact with children, his repeated interactions with an undercover officer posing as a parent, and e-mail and telephone communications discussing sexual contact with children were sufficient, individually and combined, to show that the defendant took "a substantial step towards persuading, inducing, enticing, or coercing a child to engage in sexual activity").

6

**B. Agent Kuc's Testimony**

Walker challenges the admission of Agent Kuc's testimony on two grounds: (1) that Agent Kuc testified as an expert without prior notice;[13] and (2) that the testimony as to his past experiences was irrelevant and unfairly prejudicial. We disagree.[14]

As relevant here, when asked generally about controlled deliveries, Agent Kuc testified that there were safety concerns that must be accounted for and concerns that "the defendant . . . would become aware of law enforcement's involvement and try not to receive the package."[15] He further testified that he had seen this happen " a lot of times, the people that we're trying to deliver to . . . will move drop locations . . . from one spot to another" and "[o]ftentimes, savvy . . . targets will move the location somewhere else, that they'd control and we don't have that control."[16] Agent Kuc also testified that Walker changed the location of the meeting with the mail carrier, but he did not provide an opinion as to why Walker had done so. Walker now argues that Agent Kuc's "testimony regarding the meeting place change predilections of persons in drug investigations constituted expert testimony without being qualified by the Court to so testify."[17]

---

[13] *See* Fed. R. Crim. P. 16(a)(1)(G).

[14] Because Walker did not challenge Agent Kuc's testimony on the basis that it was improper expert testimony at trial, the challenge is reviewed for plain error. *See United States v. Polishan*, 336 F.3d 234, 244 (3d Cir. 2003). We may reverse a district court for a plain error only if we conclude (1) an error was committed, (2) it was plain, and (3) it affected the outcome of the proceedings. *United States v. Olano*, 507 U.S. 725, 733–34 (1993). His preserved evidentiary challenge to the relevance of the testimony is reviewed for abuse of discretion. *See United States v. Davis*, 726 F.3d 434, 440 (3d Cir. 2013).

[15] App. 282–83.

[16] App. 283–84.

[17] Walker Br. 31.

Contrary to Walker's characterization of Agent Kuc's testimony, we find that the testimony was permissible lay testimony. Rule 701 permits lay witnesses to testify concerning their opinions if those opinions are "rationally based on the witness's perception," are "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[18] However, "we have [] clarified that . . . '[w]hen a lay witness has particularized knowledge by virtue of her experience, she may testify—even if the subject matter is specialized or technical—because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702.'"[19] We will not reverse a district court's ruling to admit lay testimony unless "no reasonable person would adopt [its] view."[20]

Agent Kuc's testimony was based on his personal knowledge of the investigation against Walker and experience in controlled deliveries. The testimony was helpful to the jury in understanding the circumstances surrounding the attempted controlled delivery, including reasons for delay in moving from one location to another. Further, Agent Kuc did not ultimately provide an opinion as to why Walker changed the meeting location; instead, he allowed the jury to draw its own conclusions. And the testimony did not involve any specialized or technical knowledge, rather Agent Kuc made commonsense

---

[18] Fed. R. Evid. 701.
[19] *United States v. Fulton*, 837 F.3d 281, 301 (3d Cir. 2016) (quoting *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009)).
[20] *See United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009) (quoting *Ansell v. Green Acres Contracting Corp.*, 347 F.3d 515, 519 (3d Cir. 2003)).

observations based on his personal experience. Thus, the testimony was properly admitted as lay testimony.[21]

In any event, even if we were to find that Agent Kuc testified as an expert, the error certainly does not meet the standard for plain error. The point at which lay testimony becomes expert testimony is hazy and there is no clear guidance on when a law enforcement officer's testimony based on his personal experience becomes expert testimony. Thus, any error "would not have been 'clear or obvious, rather than subject to reasonable dispute.'"[22]

Further, under the circumstances of this case, Agent Kuc's testimony was certainly relevant. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[23] At issue in this case is whether Walker knowingly attempted to possess the packages containing marijuana. Agent Kuc testified that suspects sometimes move a meeting location to avoid law enforcement and maintain control over the drug meet. From this testimony, and testimony that Walker did in fact change meeting locations several times, the jury could infer that Walker moved the meeting

---

[21] *See United States v. Valdivia*, 680 F.3d 33, 50–51 (1st Cir. 2012) (holding that the agent's testimony "that traffickers often list unrelated third parties as their telephones' subscribers, and that, in this case, the phone account at issue was organized under a similar scheme" was proper lay testimony under Rule 701 because it was based on the officer's personal experience in prior drug investigations and did not require technical or scientific expertise).

[22] *Fulton*, 837 F.3d at 302 (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).

[23] Fed. R. Evid. 401.

location in an attempt to evade law enforcement and take possession of the illegal drugs. The testimony was thus relevant.

Walker also asserts that the challenged testimony was unfairly prejudicial because it led the jury to believe that Walker moved the meeting location to avoid detection. We again disagree.

While "Rule 403 allows relevant evidence to be excluded when its probative value is substantially outweighed by the potential for unfair prejudice,"[24] we cannot find that the District Court abused its discretion in admitting the challenged testimony. Walker's arguments amount to a mere complaint that the challenged testimony might have caused the jury to believe he was guilty of attempting to possess illegal drugs. But that is not unfair prejudice. We have explained that "[v]irtually all evidence is prejudicial."[25] "[T]he prejudice against which the law guards is *unfair* prejudice— prejudice of the sort which clouds impartial scrutiny . . . . [T]he fact that probative evidence helps one side prove its case obviously is not grounds for excluding it under Rule 403."[26] Walker fails to show that the challenged evidence was unfairly prejudicial, and nothing in the record suggests that the District Court erred in admitting the testimony.

---

[24] *United States v. Lacerda*, 958 F.3d 196, 223 (3d Cir. 2020).

[25] *Carter v. Hewitt*, 617 F.2d 961, 972 n.14 (3d Cir. 1980) (quoting *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)).

[26] *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002) (quoting *Wagenmann v. Adams*, 829 F.2d 196, 217 (1st Cir. 1987) (emphasis in original)); *see also Starnes*, 583 F.3d at 215 (discussing same).

### C. Authenticity of Personnel File and Tracking Records

Finally, Walker argues that the District Court erred in admitting the mail carrier's United States Postal Service personnel file and a package delivery printout because the Government failed to sufficiently authenticate the documents. We disagree.

Under Rule 901(a) of the Federal Rules of Evidence, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[27] "We have repeatedly noted that '[t]he burden of proof for authentication is slight.'"[28]

The Government introduced the documents Walker challenges through the testimony of Postmaster Carrozza. At the time of trial, Postmaster Carrozza had worked for the United States Postal Service for twenty-five years. He testified as to his familiarity with the creation and maintenance of employment files and package tracking records. Based on his numerous years of experience, including the retrieval and review of personnel files for his own employees, Postmaster Carrozza's testimony was sufficient to support the Government's claim that the records constituted the mail carrier's personnel file and a package delivery printout.[29]

---

[27] Fed. R. Evid. 901(a).

[28] *Lexington Ins. Co. v. Western Penn. Hosp.*, 423 F.3d 318, 328 (3d Cir. 2005) (quoting *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir. 1985)).

[29] *See Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) (finding that documents were properly authenticated under Rule 901 where there was testimony demonstrating "knowledge that the materials were what appellees claimed them to be"); *see also United States v. Estrada-Eliverio*, 583 F.3d 669, 672-73 (9th Cir. 2009) (holding that agent's testimony was sufficient to authenticate documents from defendant's

Accordingly, the District Court did not abuse its discretion in admitting both exhibits.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

---

immigration file and recognizing that "FRE 901 does not require personal knowledge of a document's creation, but rather only personal knowledge that a document was part of an official file").